[No. 21604-3-II.  Division Two.  November 6, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH R. DEWEY, *Appellant*.

[5]83 Wn.2d 937.

[6]50 Wn. App. 405.

[7]84 Wn. App. 5.

*James L. Reese III*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

ARMSTRONG, J. — Kenneth R. Dewey challenges his convic-

tion for rape in the third degree. Dewey contends that the trial court violated ER 404(b) by admitting evidence of a prior rape of a different woman, that the court improperly commented on the evidence in a jury instruction limiting the jury's consideration of the other incident, and that RCW 9.94A.120(4), commonly known as the "Three Strikes Law," is unconstitutional. We hold that evidence of the prior rape was improperly admitted and that the jury instruction constituted a comment on the evidence; we reverse.

## FACTS

K.B. met Dewey on a bus in June 1996. The two talked and eventually Dewey asked K.B. to go out with him that night to sing karaoke. That evening Dewey arrived at K.B.'s residence on foot; they drove her car to a restaurant, where they talked for about an hour and a half. As they were leaving, they noticed that a headlight on K.B.'s car had burned out. Dewey offered to borrow a headlight from his car if they would swing by his house. They went to his place, a trailer on SR 308 in Kitsap County and, after replacing the headlight, he invited her to stay for a cup of coffee. She accepted, and they went inside and talked.

Shortly before midnight, K.B. said she had to leave. Dewey said no and, according to K.B., his "whole personality changed." He picked her up and carried her to the bed. She struggled, protesting that she "[didn't] want to do this" and "wanted to go home." But he said he "just wanted to love" her. She continued to struggle, but he would not stop. Dewey took her clothes off, had intercourse with her, and laid on her "for about five minutes," kissing her. Dewey then allowed K.B. to dress and drove her home, where he waited for her to get safely into the house, acting as if it "was the end of a regular date."

Dewey testified that the date culminated in consensual sex, after which he drove KB home, but not before they made plans for another date.

Before trial, the State moved to introduce evidence of two prior incidents that had resulted in rape convictions for Dewey in 1992 and 1994. The superior court ruled that the facts of the 1994 incident would be admitted, but it excluded evidence of the 1992 incident. The State's written offer of proof as to the 1994 incident was as follows:

> On June 24, 1994, A.N.R. . . . accepted an invitation from the defendant, Kenneth Dewey, to go country dancing. A.N.R. was a hostess at a restaurant and had become an acquaintance of the defendant through her employment . . . Dewey picked A.N.R. up from her place of employment and they went to a tavern and had some beer. They then attempted to find a country bar to go dancing but were unable to find one. The defendant suggested that they go to his place and A.N.R. agreed.

> They arrived at the defendant's residence on State Highway 308, Poulsbo, Washington. The defendant offered A.N.R. a beer but she declined. The defendant continually attempted to hug A.N.R. and she repeatedly pushed him away. Then he forced her down onto his bed and she pushed him to get back up. At this point he cornered her and pushed her back and straddled her while she lay on the bed. . . . At this point A.N.R. began to fight. She was frightened and attempted to get up. Dewey threw her back on the bed. When she asked Dewey why he was doing this to her he told her not [to] ask and then told her that she was beautiful. Dewey removed the victim's clothing and performed oral and vaginal intercourse with her. . . .

> When the act of intercourse was completed, Dewey thanked A.N.R. and told her that she was beautiful. . . . After repeated requests [by the victim to go home], the defendant allowed the victim to get dressed and drove her, in his car, back to the location where her vehicle had been left. He asked her when they could see each other again and waited until her car started before he drove off.

The superior court ruled that this evidence was admissible under ER 404(b) on the issue of whether K.B. consented to sexual intercourse and as evidence of a common scheme or plan. But the court did not allow the State to show that Dewey was convicted for the incident.

Both the State and the defense proposed jury instructions limiting the purpose for which the jury could consider the 1994 incident. Just before A.N.R. testified, the court gave the defense instruction that the jury could consider the "incident" only to determine (1) whether K.B. consented to sex with Dewey, or (2) whether Dewey acted under a common scheme or plan.[1] But at the conclusion of the evidence the court gave the State's limiting instruction, which referred to the A.N.R. incident as a "rape."

The jury convicted Dewey of third degree rape. As a persistent offender, he received a life sentence without possibility of parole. RCW 9.94A.120(4).

## ANALYSIS
### A. Prior Bad Acts Evidence

The State offered the 1994 incident to show Dewey's common scheme or plan and the absence of the victim's consent.

ER 404(b) provides that evidence of other crimes or acts is not admissible to prove a person's character in order to

---

[1] In its entirety, the defense instruction read to the jury before A.N.R. took the stand was as follows:

Evidence will be offered concerning an incident occurring June of 1994 for which the defendant is not on trial.

This evidence is not being received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes.

This evidence is being admitted and may be considered by you for the limited purpose of determining if it tends to show that: one, on June 20th, 1996 the defendant engaged in sexual intercourse with [K.B.] when she did not give her consent, and that lack of consent was clearly expressed by her words and conduct.

And/or that on June 20th if the defendant committed the offense of third degree rape that this was part of a common scheme or plan on the part of the defendant.

For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do all other evidence in the case.

You are not to [sic] permitted to consider such evidence for any other purpose.

show action in conformity therewith, but that such evidence may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

■ ■ To admit evidence of other crimes or "bad acts" under ER 404(b), the trial court must (1) identify the purpose for which the evidence would be introduced; (2) determine whether the evidence is relevant to prove an element of the crime; and (3) weigh the probative value of the evidence against its prejudicial effect. *State v. Lough*, 125 Wn.2d 847, 852-53, 889 P.2d 487 (1995). But to be admissible, "the evidence of prior conduct must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations." *Lough*, 125 Wn.2d at 860 (citation omitted).[2]

The common features here are: (1) Dewey used friendly conversation to develop a level of trust with both A.N.R. and K.B.; (2) he invited each woman to accompany him on a date to a restaurant or lounge to enjoy music (in one case, country dancing, in the other, karaoke); (3) on both occasions, after they left the public establishment Dewey suggested they go to his home; (4) in both cases, after initially playing the sociable host, Dewey forcibly had sexual intercourse with the women; (5) afterward, Dewey was friendly toward the women—allowing them to dress, driving them home, and acting as if they had been on "a regular date" culminating in consensual sex.

A comparison with *Lough* is helpful. In *Lough* the defendant, a paramedic, was charged with raping the victim after surreptitiously giving her drugs that rendered her unconscious. The State introduced evidence of four earlier rapes committed in the same manner. The Supreme Court held

---

[2]The act of rape itself cannot be part of the "common plan," otherwise the courts would merely be stating that because an individual raped before they raped again. This is "propensity" reasoning that ER 404(b) prohibits.

the evidence was properly admitted to show plan, not propensity. *Lough*, 125 Wn.2d at 861. The defendant's "history of drugging women, with whom he had a personal relationship, in order to rape them while they were unconscious or confused and disoriented evidences a larger design to use his special expertise with drugs to render them unable to refuse consent to sexual intercourse." *Lough*, 125 Wn.2d at 861. The common features pointed to by the court as evidence of the plan were features not common to most rapes, i.e., the defendant's expertise with drugs, use of drugs on women with whom he had a relationship, and sex after the women had been rendered unconscious or confused.

By comparison, Dewey struck up a friendship with each woman and invited her on a date. After going out, Dewey invited each victim to his home and then forcibly raped her. After the rapes, Dewey acted as if each victim had consented to the sex. With the possible exception of Dewey's conduct after the incidents, nothing in the rapes was unique or common only to these rapes. And we find Dewey's conduct after the rapes not sufficient alone to establish the "overarching plan" found in *Lough*.[3]

The State, however, cites two recent Division One cases in which the court approved evidence of prior sexual misconduct, *State v. Carleton*, 82 Wn. App. 680, 919 P.2d 128 (1996), and *State v. Krause*, 82 Wn. App. 688, 919 P.2d 123 (1996), *review denied*, 131 Wn.2d 1007 (1997). In *Carleton*, the defendant was charged with third degree rape of a teenage boy. The State offered evidence of the defendant's sexual contact with two other teenage boys to show a

---

[3]In *Lough* the Court stressed that it was the method of obtaining sexual intercourse, i.e., drugging the women, that served as the basis for the finding that a common plan existed. *Lough*, 125 Wn.2d at 861, 865. The court noted the post-rape conduct of the defendant, that Lough had warned the women not to report the rapes because no one would believe them, only in the section of the opinion dealing with whether the state had proven the prior incidents by a preponderance of the evidence. *Lough*, 125 Wn.2d at 864. The post-rape conduct was not explicitly recognized as the basis of the common plan, and some of the post-rape similarities, such as folding of the victim's clothing, were not even noted by the court other than in the recitation of the facts of each incident. *Lough*, 125 Wn.2d at 849, 851.

plan: to befriend younger boys in youth organizations, to talk about his alternate homosexual personality, and then to have sexual contact with the boys while they were sleeping. The court held that this "markedly similar conduct" was sufficient to allow a finder of fact to find that the defendant's "conduct was directed by design." *Carleton*, 82 Wn. App. at 684.

In *Krause*, the defendant was charged with one count of first degree child rape and five counts of first degree child molestation involving two victims. The trial court allowed a psychologist to testify about earlier incidents Krause had with children of similar ages. Division One held the evidence sufficient to show a "systematic scheme" as outlined by the trial court: " 'He ingratiates himself with adults who are in the position of trust over small boys, whether their parents or aunts or uncles, then he proceeds to groom them, he isolates them in certain manners . . . and then goes ahead and molests them over protest.' " *Krause*, 82 Wn. App. at 694. Again, Division One found the evidence sufficient to give a finder of fact " 'strong indication of a design (not a disposition)' to molest boys." *Krause*, 82 Wn. App. at 695.

But neither *Krause* nor *Carleton* discussed whether the *Lough* common features had to be unique or uncommon to the way in which the crimes are typically committed. And under the *Krause-Carleton* reasoning, it is difficult to imagine a case in which evidence of prior misconduct would be excluded. As the *Krause* court said, evidence of the earlier molestations was a " 'strong indication' " of Krause's " 'design . . . to molest boys.' " *Krause*, 82 Wn. App. at 695 (quoting 2 JOHN HENRY WIGMORE, EVIDENCE § 357, at 335 (James H. Chadbourn ed., rev. ed 1979)). But this is surely no more than saying that Krause has a propensity to molest boys— reasoning that violates ER 404(b).

In conclusion, we hold that the common features required by *Lough* to establish a plan must be features other than those common to most rapes. Otherwise, all evidence of other rapes would be admissible to show plan, and ER

404(b), which prohibits propensity evidence, would be meaningless. In addition, we hold that the evidence here was neither unique nor sufficiently uncommon to demonstrate a plan under *Lough.*

The State argues, however, that the evidence was admissible to show an absence of mistake. The State concedes that intent is not a specific element of third degree rape, but it contends that Dewey's state of mind was at issue when he claimed the victim consented to the sex. The State characterizes Dewey's contention as (1) either the victim did not express her lack of consent by words, or (2) Dewey misinterpreted the victim's actions.

The argument fails for two reasons. First, there is no evidence of a mistake. The victim testified that she protested and struggled. Dewey testified that the victim was a willing participant. Neither testified that the victim said something or acted in a way that Dewey might have misunderstood.

■ Second, to admit evidence of intent pursuant to ER 404(b), intent must be a material issue in the case. *State v. Saltarelli*, 98 Wn.2d 358, 362-63, 655 P.2d 697 (1982). Evidence to show intent should not be admitted "if intent is of no consequence to the outcome of the action." *Saltarelli*, 98 Wn.2d at 362-63. Here, Dewey admitted having intercourse with the victim. Thus, there was no issue of intent. *Saltarelli*, 98 Wn.2d at 366.

### B. Comment on the Evidence

Dewey contends that the trial court commented on the evidence in giving limiting Instruction 5, which provided, in part: "Evidence has been introduced in this case, on the subject of the *rape* of [A.N.R.] in June of 1994, for the limited purpose of showing if . . . ." (Emphasis added.)

Dewey argues that use of the term "rape" conveyed to the jury that the judge believed A.N.R. was telling the truth. We agree.

■ Article IV, section 16 of the Washington Constitution

prevents judges from commenting to the jury on matters of fact. Thus, the judge may not convey to the jury his or her opinion concerning the testimony. *State v. Eisner*, 95 Wn.2d 458, 461-62, 626 P.2d 10 (1981). "A constitutionally prohibited comment on the evidence allows the jury to infer from what the judge said or did not say that he personally believed or disbelieved the testimony in question." *Hizey v. Carpenter*, 119 Wn.2d 251, 271, 830 P.2d 646 (1992).

Just before A.N.R testified, the court instructed the jury that they would hear evidence concerning an "incident." But the final instruction described the incident as a "rape." The "incident" would become a "rape" only if A.N.R.'s testimony were believed. We conclude that the Instruction 5 allowed the jury to infer that the judge accepted A.N.R's testimony as true. This is prohibited by article IV, section 16. Accordingly, the trial court erred in giving Instruction 5 as worded.

## C. RCW 9.94A.120(4)—Initiative 593

Finally, Dewey challenges the constitutionality of RCW 9.94A.120(4), Initiative 593 ("Three Strikes Initiative"). Dewey argues that the law: (1) violates the separation of powers doctrine; (2) imposes cruel and unusual punishment; (3) violates equal protection; and (4) violates due process of law. All of Dewey's arguments have been addressed and rejected by the Supreme Court in *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996), and *State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997).

Reversed and remanded for retrial.

HOUGHTON, C.J., and HUNT, J., concur.

Review denied at 137 Wn.2d 1024 (1999).