[No. 46653-4-I.   Division One.   June 10, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. LOUIS A. DEVINCENTIS, *Appellant*.

---

*Suzanne L. Elliott*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Heather M. Jensen, Deputy*, for respondent.

BECKER, C.J. — This is an appeal from a conviction for sexually abusing a child. Applying *State v. Lough*,[1] the trial court admitted evidence that the appellant had previously victimized another girl in a markedly similar way under markedly similar circumstances. Appellant asks us to hold that evidence of a prior sex crime does not prove a common scheme or plan unless it has unique or uncommon features

---

[1] *State v. Lough*, 125 Wn.2d 847, 889 P.2d 487 (1995).

atypical of the way the crime is usually committed. Because the limitation he suggests is not found in *State v. Lough*, and indeed is a feature of cases that the Supreme Court rejected when it decided *State v. Lough*, we reject his argument and affirm his conviction.

Appellant Louis DeVincentis was convicted of child rape and child molestation. In the summer of 1998, DeVincentis asked the girl who lived next door and her friend, 12-year-old K.S., if they wanted to mow his lawn to earn some money. After they mowed the lawn a few times, he hired them to do housecleaning. Eventually, he asked K.S. to come by herself to clean his house. DeVincentis began to wear only g-string bikini underwear around the house when she was present and said something to the effect of, "I hope you don't mind." One day, DeVincentis said that he was sore from working out and asked K.S. to give him a massage. Wearing only his bikini underwear, DeVincentis lay on the couch while K.S. massaged his back. When she left, he told her not to tell anyone.

A few weeks later, DeVincentis asked K.S. to give him another massage. Again, he wore only the g-string bikini underwear. DeVincentis asked K.S. to remove her clothes, and she complied. DeVincentis removed his underwear. At his request, K.S. massaged his buttocks and legs. DeVincentis massaged her back, buttocks and legs. He asked her to massage his stomach and then his penis. This continued until DeVincentis ejaculated. DeVincentis then massaged the girl's chest and stomach and digitally penetrated her vagina. DeVincentis warned her not to tell anyone about what had happened because she would get in trouble.

K.S. returned to clean DeVincentis' home once more. DeVincentis called her into the bedroom, again wearing only bikini underwear. He asked the girl if she wanted to give him another massage. He told her to remove her clothing, and they repeated the previous massage session. DeVincentis digitally penetrated the girl's vagina, and instructed her to massage his penis. Again, DeVincentis

warned K.S. not to tell anyone because she would get in trouble. But soon thereafter, K.S. made a disclosure to her mother that led to the criminal charges being filed.

DeVincentis had several convictions for sexual misconduct with minors occurring in New York in 1980 and 1983. Before trial, the State moved to admit evidence of his prior misconduct under the common scheme or plan exception to ER 404(b). The trial court carefully assessed the similarities between the prior misconduct and the current allegations. The court decided to consider the evidence in one prior case as potentially admissible, after reading a transcript of the victim's grand jury testimony. The victim in that case, V.C., had been a friend of DeVincentis' daughter and often went to her house after school. She was 10 years old at the time. Testifying in the present case, V.C.—now an adult—described how DeVincentis gradually induced her participation in sexual encounters.

The trial court found V.C.'s testimony to be credible and determined that the State had proven the prior misconduct by a preponderance. The court concluded that it was admissible because it established sufficient similarity to support a common scheme or plan:

> Mr. DeVincentis in both instances wore only bikini underwear or a G-string around the house in front of young girls. It was a form of grooming and it gave the impression that this was normal behavior in his home. He asked for massages from both; he asked both girls to hold or massage his penis and he ejaculated; he asked both whether his dress or lack of dress bothered them or if they minded how he was dressed. He told each not to tell, and he told each girl on at least one occasion to take off her clothes.

DeVincentis waived his right to a jury and was found guilty on both counts. The court imposed a standard range sentence of 240 months.

On appeal, DeVincentis assigns error to the court's decision to admit the testimony of V.C. The leading case on the admissibility of evidence of prior sexual misconduct to show a common scheme or plan is *State v. Lough*, 125 Wn.2d 847,

889 P.2d 487 (1995). The defendant in *Lough* was charged with raping a woman when she was unconscious as the result of drugs the defendant had given her. The trial court allowed the State to present evidence that Lough had drugged and raped other women in a similar manner over a period of about 10 years. The evidence was admitted to show a common scheme or plan. The defendant was convicted as charged. His conviction was initially reviewed, and affirmed, by the Court of Appeals. *State v. Lough*, 70 Wn. App. 302, 853 P.2d 920 (1993). The Supreme Court granted review, and also affirmed.

■ Relying on the Court of Appeals opinion in *Lough*, DeVincentis argues that a common scheme or plan can be proved only if the similar acts are shown to have been frequently repeated. *See Lough*, 70 Wn. App. at 319-22. He fails to recognize that the lower courts are obliged to follow the Supreme Court's opinion in *Lough*, not the Court of Appeals opinion. *See State v. Gore*, 101 Wn.2d 481, 681 P.2d 227 (1984) (once the Washington State Supreme Court decides an issue of state law, that interpretation is binding on all lower courts until overruled by the Supreme Court). The Court of Appeals opinion cannot be relied upon as a basis for excluding testimony that would be admissible under the Supreme Court's opinion. The Supreme Court recognized that " 'a single previous act, even upon another woman, *may*, with other circumstances, give strong indication of a design (not a disposition) to rape.' " *Lough*, 125 Wn.2d at 858-59 (quoting 2 John H. Wigmore, Evidence § 357, at 335 (James H. Chadbourn ed., rev. ed. 1979)).

■ Under the Supreme Court's opinion in *Lough*, a common plan or scheme may be established by evidence that the defendant "committed markedly similar acts of misconduct against similar victims under similar circumstances." *Lough*, 125 Wn.2d at 852. One panel of the Court of Appeals has augmented this test by holding that the common features of present and past misconduct, when used to show a plan under *Lough*, must be unique or uncommon compared to the way the crime is typically

committed. *State v. Dewey*, 93 Wn. App. 50, 57-58, 966 P.2d 414 (1998) (reversing rape conviction because the evidence "was neither unique nor sufficiently uncommon to demonstrate a plan under *Lough*"). Although this requirement is not to be found in *Lough*, the *Dewey* court thought it significant that the common features pointed out by the Supreme Court in *Lough* were "features not common to most rapes, i.e., the defendant's expertise with drugs, use of drugs on women with whom he had a relationship, and sex after the women had been rendered unconscious or confused." *Dewey*, 93 Wn. App. at 56.

The *Dewey* court criticized other Court of Appeals opinions for affirming convictions under *Lough* without discussing "whether the *Lough* common features had to be unique or uncommon to the way in which the crimes are typically committed." *Dewey*, 93 Wn. App. at 57. *See State v. Krause*, 82 Wn. App. 688, 694-95, 919 P.2d 123 (1996) (accessing young boys through relationship with authority figure, playing games with children, taking them on outings, and molesting them in isolated locations indicated scheme or plan to molest boys, not disposition); *State v. Carleton*, 82 Wn. App. 680, 684, 919 P.2d 128 (1996) (markedly similar pattern of meeting teenage boys through youth organization, befriending boys, and engaging in sex acts after describing self as having alternate homosexual personality indicated scheme or plan); *State v. Baker*, 89 Wn. App. 726, 733-34, 950 P.2d 486 (1997) (similarities in relationships, ages of victims, and manner of touching indicative of design rather than coincidence). The *Dewey* court found it "difficult to imagine a case in which evidence of prior misconduct would be excluded" under *Krause* and *Carleton*. *Dewey*, 93 Wn. App. at 57. The court concluded that ER 404(b)'s prohibition against propensity evidence would be meaningless unless the features that establish a common scheme or plan are uncommon to the crime.

DeVincentis essentially argues that *Lough* is confined to its facts and that this court should follow *Dewey* in holding that the common features must be unique or uncommon to

the crime. For example, one of the numerous features identified by the trial court as showing a common scheme by DeVincentis to molest both V.C. and K.S. was that he "told each not to tell." Because instructing the victim to keep the molestation secret is a frequent occurrence in sex crimes against minors, DeVincentis argues that it cannot support a finding of a common scheme or plan.

We share with *Dewey* the view that caution is called for in application of the common scheme or plan exception as defined in *Lough*. Random similarities will not make prior misconduct admissible. The similarities must prove a plan, of which the various acts can be naturally explained as an individual manifestation. *Lough*, 125 Wn.2d at 860. But in demanding that the similarities be unique or uncommon, *Dewey* confuses the common scheme or plan exception to ER 404(b) with the modus operandi exception. A unique modus operandi or signature allows the use of prior misconduct to prove identity. *See State v. Vy Thang*, 145 Wn.2d 630, 643, 41 P.3d 1159 (2002). In a sex case, evidence of a common scheme or plan is typically used, not to prove identity, but rather to prove that the conduct actually occurred, when the defendant contends that the victim's testimony amounts to a fabrication or a misunderstanding. It is not essential after *Lough* that the common features used to prove such a plan must be so distinctive as to amount to a signature.

Not only is *Dewey*'s "unique or uncommon" limitation not found in *Lough*, it is also a reversion to disfavored pre-*Lough* case law. One such case is *State v. Bowen*, 48 Wn. App. 187, 738 P.2d 316 (1987). In *Bowen*, the State charged the defendant—a doctor—with indecent liberties. The trial court allowed the State to offer testimony concerning two prior uncharged sexual assaults. In both the charged and uncharged incidents, Dr. Bowen visited the homes of female patients he knew to be separated from their husbands. Once inside the homes, Dr. Bowen allegedly put his hand in the women's shirts and grabbed their breasts. Based on the similarity between the prior misconduct and the charged

offense, the trial court determined that the testimony of the prior victims was admissible to show common scheme or plan. *Bowen*, 48 Wn. App. at 189. The Court of Appeals, reversing, held that the evidence demonstrated little more than a general propensity to commit indecent liberties; there was no causal link between the two prior offenses and the current charge. *Bowen*, 48 Wn. App. at 192.

The court then determined that the correct exception under ER 404(b), based on the State's theory, was modus operandi, not common scheme or plan, "since the prior assaults were introduced on the theory that they were peculiarly similar to the charged crime." *Bowen*, 48 Wn. App. at 192. The modus operandi exception requires more than mere similarity with the other criminal acts. There must be something distinctive or unusual in the means employed in such crimes and the crime charged. *Bowen*, 48 Wn. App. at 193. Separate crimes are recognizable as the handiwork of one person by their characteristic "signature." Furthermore, the primary purpose of the modus operandi exception is to identify the unique signature of the offenses and thus corroborate the identity of the perpetrator. *Bowen*, 48 Wn. App. at 193. Because Dr. Bowen's method of sexual assault was not particularly distinctive or unusual, and his identity as the alleged perpetrator was not in question, the court held in *Bowen* that the similarity of the prior incidents did not justify admitting them in evidence.

In *Lough*, the Supreme Court placed *Bowen* in the category of cases that are overly restrictive with respect to the common scheme or plan exception. *Lough*, 125 Wn.2d at 854 n.9. Indeed, the Supreme Court found none of the Washington cases helpful, and looked for insight to decisions from other jurisdictions. Among the decisions the court discussed with approval was *State v. Wermerskirchen*, 497 N.W.2d 235 (Minn. 1993). The *Lough* court specifically repeated *Wermerskirchen*'s warning against confusing the common scheme or plan exception to ER 404(b) with the exception for modus operandi, or so-called "signature" crimes. *Lough*, 125 Wn.2d at 858 n.15 (citing

*Wermerskirchen*, 497 N.W.2d at 240). *Bowen*, clearly, is no longer a useful precedent in determining the admissibility of prior sexual misconduct to prove a common scheme or plan.

One reason the common scheme or plan exception arises in prosecutions alleging sexual abuse of children is that such crimes often occur only after the perpetrator has successfully used techniques designed to obtain the child's cooperation. Such techniques, including the desensitization of the child to nudity, and inducing the child's silence, are seen quite frequently in sex abuse cases precisely because they are effective in achieving the goal. Such techniques, to be part of an effective plan, do not have to be unique or uncommon. The child-victim, a vulnerable witness, is often the only source of evidence to prove the crime. The fact that it is a common occurrence for perpetrators to intimidate, bribe, or coerce their victims into keeping silent should not prevent a trial court from considering such a technique when repeated, as evidence of a plan to molest children. Just as drugging the rape victims inhibited reporting, and allowed the defendant in *Lough* to repeat his crime without getting caught, procuring the silence of children is a feature that makes it possible for a plan of molestation to be carried out successfully time after time.

We decline the invitation to hold that the individual features establishing a common plan must be "unique or uncommon" as compared to the way the crime is typically committed. The inquiries and procedures set forth in *Lough*, if used conscientiously by the trial courts as was done in this case, are sufficient to guide the sound exercise of their discretion.

██ ██ DeVincentis also contends that the span of approximately 15 years between his prior misconduct and the charged offenses precludes a finding of a scheme or plan. Granted, the lapse of time may slowly erode the commonality between acts and reduce the relevance of the prior acts. *See Lough*, 125 Wn.2d at 860. But a lapse of time is not alone determinative. *Baker*, 89 Wn. App. at 734 (prior

misconduct 11 to 15 years earlier); *Wermerskirchen*, 497 N.W.2d at 242 n.3 (prior misconduct was at least seven years earlier). Here, as in *Baker* and *Wermerskirchen*, other factors strongly favored admission. There were marked similarities in the methodology of the crime and the age and circumstances of the victims. "Further, prior bad act evidence is particularly relevant when the circumstances of the alleged crime create difficulty in assessing the credibility and memory of the complaining witness." *Baker*, 89 Wn. App. at 734. *See also State v. Griswold*, 98 Wn. App. 817, 826, 991 P.2d 657 (2000) (prior incidents 11 to 13 years earlier); *Krause*, 82 Wn. App. at 691-92 (prior incidents 14 or more years earlier).

█ DeVincentis contends that the State impermissibly interjected the concept of "grooming" into its pretrial argument and that the trial judge admitted evidence of his "grooming" behavior without expert opinion defining the term. Because these arguments were not presented below, they will not be considered on appeal. *See State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

█ DeVincentis contends that V.C.'s testimony was unduly prejudicial because it was emotional and also because it exceeded that which she gave to the grand jury in 1984. He points out that in 1984, V.C. testified that DeVincentis had worn boxer shorts, not bikini underwear, during one of the incidents, and that she said DeVincentis touched her crotch, not her chest. However, the record shows that the trial court carefully evaluated the potential prejudice of V.C.'s testimony, and found it outweighed by the probative value. We find no abuse of discretion in this determination.

The similarities between the two victims, their circumstances, the gradual manner in which DeVincentis isolated them and then initiated sexual contact, the similar acts of misconduct he committed in each case, and his similar effort to prevent disclosure, all refute his assertion that his offenses against K.S. arose in response to an "unforeseen opportunity" rather than as part of a plan. A rational fact finder could well conclude that DeVincentis used a

particular strategy to win each girl's cooperation, over time, in her own victimization. We conclude the trial court did not abuse its discretion by admitting the evidence of prior misconduct.

■■ At sentencing, the court found that DeVincentis' 1984 New York conviction for second degree sex abuse, although a misdemeanor in New York, was comparable to the Washington felony of indecent liberties. Because it was a sex offense, it added three points to DeVincentis' offender score. DeVincentis argues that the court should have accepted the New York classification of the crime as a misdemeanor. But he makes no argument about the comparability of the two offenses, does not discuss the relevant statutes, and does not distinguish *State v. Bush*, 102 Wn. App. 372, 383-84, 9 P.3d 219 (2000) (affirming classification of Kansas misdemeanor as class C felony under Washington law).

At the time of sentencing, the Sentencing Reform Act of 1981 defined "sex offense" as:

> (a) A felony that is a violation of chapter 9A.44 RCW, other than RCW 9A.44.130(10), or RCW 9A.64.020 or 9.68A.090 or a felony that is, under chapter 9A.28 RCW, a criminal attempt, criminal solicitation, or criminal conspiracy to commit such crimes;

> . . . .

> (d) Any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a sex offense under (a) of this subsection.

Former RCW 9.94A.030(36) (1999).

DeVincentis argues that the reference in (d) to subsection (a) shows that an out-of-state conviction must be a felony in order to count as a "sex offense." But out-of-state convictions are to be classified "according to the comparable offense definitions and sentences provided by Washington law." Former RCW 9.94A.360(3) (1999). The purpose of the comparability analysis is to ensure that defendants with equivalent prior convictions are treated the same way

regardless of whether those prior convictions were incurred in Washington or elsewhere. *State v. Weiand*, 66 Wn. App. 29, 34, 831 P.2d 749 (1992). The New York nomenclature classifying the conviction as a misdemeanor is not dispositive.

We conclude the court did not err in treating the 1984 New York conviction as a felony and counting it as a sex offense in the offender score.

Affirmed.

COLEMAN and GROSSE, JJ., concur.

Review granted at 148 Wn.2d 1008 (2003).