IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 DEC 23 AM 10: 23
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

STATE OF WASHINGTON,     )
        )   No. 66709-2-I
      Respondent,    )
        )   DIVISION ONE
     v.        )
        )
SALVADOR ALEMAN CRUZ,   )   UNPUBLISHED OPINION
        )
     Appellant.    )   FILED: December 23, 2013
_____)

BECKER, J. — A jury convicted Salvador Cruz of four counts of first degree child rape, two counts of third degree child rape, and one count of communication with a minor for immoral purposes. The trial court dismissed two other counts during trial after jurors learned that a woman related to Cruz's case had climbed onto the courthouse roof in an incident that garnered media attention. Cruz moved unsuccessfully for a mistrial. He argues the trial court erred by denying him a new trial and by admitting evidence of prior sex offenses. Finding no error, we affirm the convictions.

In 1997 and 1998, several young girls accused Cruz of sexually abusing them in separate incidents that occurred between November 1993 and March 1998. In 1998, Cruz left the United States. When he attempted to re-enter the country in November 2008, he was detained and charged. As a result of the delay, the girls were in their twenties by the time they testified against him at trial in 2010.

Cruz represented himself with the aid of interpreters and standby counsel. The jury found Cruz guilty of multiple counts of child rape and one count of communication

with a minor for immoral purposes, and found six aggravating factors. The court

imposed an exceptional sentence of 636 months, or 53 years. This appeal followed.

## MOTION FOR A MISTRIAL

Cruz contends the court erred by denying his motion for a mistrial after the

occurrence of a serious trial irregularity—the rooftop incident.

On Thursday, November 4, 2010, after five days of testimony, one of the

victims went through an unlocked door during a lunch recess and climbed onto

the roof of the King County courthouse, where she considered suicide. She had

not yet testified or appeared in court. Police and negotiators responded to the

incident and cordoned off the area. The trial court learned that some jurors had

seen on their media devices that there was an incident occurring at the

courthouse.

The trial court gathered the jurors and had the prosecutor and Cruz's

standby counsel on speaker phone as the court addressed the incident. Cruz

was not present. The court instructed the jurors to "take a news holiday" and

avoid any information about the incident:

> I think I understand that some of you have seen on your electronic
> media that there's been a story about - - relating to this case in the
> courthouse today. I want to remind you that we have to decide this
> case based purely on the evidence produced here in court, not on
> anything that's going on outside of court anywhere, and so it's
> really important that you not get caught up in any news stories that
> may be related to this case at the courthouse today.
>    And so I want you to please take a news holiday this
> weekend.

One juror remarked that jurors had not known the incident was related to

2

the case:

> JUROR: Just a comment. We knew that there was an incident at the courthouse, but we did not know it was related to this case.
> THE COURT: Okay. Yeah, well, it doesn't really have any bearing on the merits of the case, but it's certainly something that, you know, people might in some way relate to the case.

The court urged jurors to avoid speaking with anyone about the case and the courthouse incident as they went home for the weekend.

On the following Monday, the prosecutor suggested the trial court question each juror individually to determine what he or she knew about the incident. The trial court agreed. Outside the presence of the jury, the State then moved to dismiss the two counts of child molestation involving the young woman who had gone on the courthouse roof. The court granted the motion. Cruz moved for a mistrial. He asked how the court could consider continuing with the same jury.

The trial court and the parties questioned each juror separately to determine what information each juror had about the incident, whether each had avoided all media reports as the court had ordered, and whether each juror felt he or she could be fair and decide the case solely on the evidence presented at trial. At most, some jurors knew that a young woman had climbed on the roof of the courthouse, and that the person or the incident was somehow related to Cruz's case.

Cruz asked the trial judge why they were questioning jurors when the judge himself told them the matter was related to his case. The judge said he told the jury the matter was related to the case in order to explain why jurors

3

needed to take special care to avoid all media.

When questioned, each juror said the incident would have no bearing on how he or she considered Cruz's case. The trial court denied Cruz's motion for a mistrial, finding no prejudice to his right to a fair trial.

When trial resumed, the court reminded the jurors to focus only on the evidence presented at trial:

> Just a couple of things I want to remind you of. There may be more media coverage of things related to this trial. I want to remind you, please, don't read anything about it, either in the paper or on the Internet, don't listen to any reports on the radio or the TV or whatever. I want to remind you the case needs to be decided just on the evidence that's admitted here in the courtroom.

On November 30, 2010, the trial court followed up by asking if "any of you read anything or found out anything that would make you unable to be fair and impartial?" The trial court asked two more times whether jurors had seen any media coverage that would affect their ability to be fair and impartial. No juror answered in the affirmative. The court then asked the jurors to contact the bailiff if any issue arose in this regard. The jurors did not contact the bailiff, and no further issue about the rooftop incident arose as the trial proceeded. The young woman involved did not testify.

It was a trial irregularity, not a trial error, for jurors to learn that the incident involving a young woman on the courthouse roof was somehow related to the case they were hearing. When a trial irregularity occurs, a new trial is warranted only when the defendant has been so prejudiced that nothing short of a new trial can ensure the defendant will be treated fairly. State v. Bourgeois, 133 Wn.2d

4

389, 406, 945 P.2d 1120 (1997); State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129 (1995). The granting or denial of a new trial is a matter primarily within the discretion of the trial court, and the decision will not be disturbed unless there is a clear abuse of discretion. Bourgeois, 133 Wn.2d at 406. "An abuse of discretion occurs only 'when no reasonable judge would have reached the same conclusion.'" Bourgeois, 133 Wn.2d at 406, quoting Sofie v. Fibreboard Corp., 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989). In determining the effect of an irregularity, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989).

There is no doubt that it was a serious irregularity for the jury to learn such a dramatic event was related to the trial, and the trial court treated it as such by repeatedly instructing the jury to decide the case solely on the evidence presented at trial. The primary issue is whether the irregularity prejudiced Cruz to the extent of making his trial unfair. A defendant must show "'more than a possibility of prejudice.'" Bourgeois, 133 Wn.2d at 406, quoting State v. Lemieux, 75 Wn.2d 89, 91, 448 P.2d 943 (1968).

Before the incident, jurors had already heard from several witnesses, including a police detective, a counselor, a physician, one of the victims, and the mother of two of the victims. From this testimony, jurors could glean that the alleged victims were now in their early twenties. They knew that Cruz himself

5

was conducting cross-examination of the witnesses. Two jurors knew that the person on the courthouse roof was a young woman. Two other jurors speculated that the person wanted to jump off the roof. In telling jurors to avoid all information about the incident, the trial court confirmed for them that it was related to Cruz's case.

Cruz argues jurors could put this information together and infer that the young woman on the roof was someone scheduled to testify against Cruz, either an accuser or a family member of one of the accusers. He contends a juror would likely draw the further inference that the young woman had reached such a state of desperation at the thought of reliving the abuse that she would seriously consider suicide rather than face Cruz from the witness stand. According to Cruz, such an inference would be devastating to his case because of the likelihood that it would "trigger a passionate, emotional, and even visceral reaction of outrage against Cruz and compassion for his accusers." App. Br. at 24.

What Cruz refers to as the "logical and foreseeable inferential path" is too speculative to demonstrate prejudice sufficient to warrant a new trial. Bourgeois illustrates the heaviness of the defendant's burden. Bourgeois, a teenager, was charged with a retaliation killing. Bourgeois, 133 Wn.2d at 393. A major theme in the State's case was how fearful the witnesses were to testify against Bourgeois. One of the witnesses, Debra Steward, testified that she had been threatened. Bourgeois, 133 Wn.2d at 395. After the trial, the court learned that

6

at least two jurors had seen teenage boys in the courtroom glaring at Steward when she was testifying, and one juror had seen a gesture made toward Steward as if the spectator were firing a gun. Bourgeois, 133 Wn.2d at 397-98. Bourgeois moved, unsuccessfully, for a new trial.

Our Supreme Court agreed that the gun-mimicking gesture was a "fairly serious" irregularity, especially in light of the trial court's erroneous admission of testimony that witnesses were fearful. Bourgeois, 133 Wn.2d at 409. "Because fear and retaliation were such central themes in the State's case, the gesture arguably reinforced the impression that the defendant and his friends were the type of people that harm those who testify against them. In that sense it may have reinforced the State's theory that Bourgeois had a motive to commit the charged offenses." Bourgeois, 133 Wn.2d at 409. Even so, the court concluded the misconduct was not "so significant that the defendant will have been treated unfairly unless granted a new trial." Bourgeois, 133 Wn.2d at 409. This was the case even though the jury had not been specifically instructed to disregard the spectator misconduct, as it did not come to the court's attention until after the verdict.

Here, the irregularity had less potential for prejudice than the threatening gesture in Bourgeois. The incident did not occur inside the courtroom. Unlike in Bourgeois, what jurors knew about the incident did not have a direct connection to the evidence against the defendant. Unlike in Bourgeois, the incident did not serve to reinforce central themes of fear and retaliation or to bolster improperly

admitted testimony.

Cruz's argument for a mistrial depends not only on a speculative "inferential path," but also on an erroneous assumption that jurors would be unable to disregard the incident. As in Bourgeois, the jury was instructed to consider only the testimony and evidence admitted at trial. "We assume that the jury followed this instruction and therefore disregarded extraneous matters." Bourgeois, 133 Wn.2d at 409, citing State v. Lough, 125 Wn.2d 847, 864, 889 P.2d 487 (1995). And unlike in Bourgeois, the trial court instructed jurors to ignore news media reports about the rooftop incident and repeatedly questioned them to ensure that they had not heard or seen anything that would affect their ability to render a fair and impartial verdict.

Because the potential prejudice of a courtroom spectator's threatening gesture was not judged significant enough to warrant a new trial in Bourgeois, we conclude the jurors' limited knowledge of the rooftop incident was not significant enough to warrant a new trial for Cruz. Cruz fails to carry his heavy burden to show that "'no reasonable judge would have reached the same conclusion.'" Bourgeois, 133 Wn.2d at 406, quoting Sofie, 112 Wn.2d at 667.

## EVIDENCE OF PRIOR SEX OFFENSES

Next, Cruz contends the trial court improperly admitted evidence of his prior sexual offenses against two sisters, AB and FP. These two young women were the first to make disclosures of sexual abuse by Cruz.

In 1997, Cruz was charged with first degree rape of a child and first

degree child molestation in connection with acts involving AB and FP. He pleaded guilty to one count of the lesser charge of communicating with a minor for immoral purposes as part of a plea agreement. The plea agreement was accepted, and the charges involving these two girls were resolved before Cruz left the country in 1998.

In the present case, the trial court allowed AB and FP to testify about Cruz's sexual abuse of them, finding that the evidence of these prior acts was admissible under RCW 10.58.090 and ER 404(b).

The State correctly concedes that the trial court erred by relying on RCW 10.58.090 for admitting the evidence. That statute was later invalidated as a violation of the separation of powers doctrine. State v. Gresham, 173 Wn.2d 405, 269 P.3d 207 (2012). However, this court may affirm the trial court on any correct ground. Gresham, 173 Wn.2d at 419. The trial court admitted the evidence about Cruz's sexual abuse of the two sisters on the alternative basis that it established a common scheme or plan under ER 404(b). As the court did with respect to one defendant in Gresham, we affirm the trial court on this basis.

Provided the trial court has interpreted a rule of evidence correctly, this court reviews the trial court's determination to admit or exclude evidence for abuse of discretion. Gresham, 173 Wn.2d at 419.

Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Where "the issue is whether a crime occurred, the existence of a design to fulfill sexual compulsions evidenced by a pattern of past behavior is probative," and prior bad acts may be admitted to show a plan or design if they satisfy a substantial threshold. State v. DeVincentis, 150 Wn.2d 11, 17-18, 74 P.3d 119 (2003). For a court to admit evidence of prior bad acts to prove a common scheme or plan, the acts must be: (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial. DeVincentis, 150 Wn.2d at 17; State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995).

"Random similarities are not enough," but there is no requirement that the similarities in the evidence "be atypical or unique to the way the crime is usually committed." DeVincentis, 150 Wn.2d at 13, 18, abrogating State v. Dewey, 93 Wn. App. 50, 966 P.2d 414 (1998), review denied, 137 Wn.2d 1024 (1999), and State v. Griswold, 98 Wn. App. 817, 991 P.2d 657 (2000). Rather, "the trial court need only find that the prior bad acts show a pattern or plan with marked similarities to the facts in the case before it." DeVincentis, 150 Wn.2d at 13; see also Lough, 125 Wn.2d at 856, 889 P.2d 487.

Cruz attempts to distinguish DeVincentis by arguing that the evidence there showed a shrewd plan to convince girls they were safe and to induce them to engage in sexual intercourse without the use of threats or force. In contrast, Cruz argues, his conduct was crude, impulsive, and forceful. But just as the

10

similarities in the evidence do not have to show a unique or atypical method of committing the crime, neither does the evidence have to show a gradual desensitizing and grooming of young girls. Cruz was not a groomer; rather, he was an intimidator who convinced young girls he would hurt or kill them and their families if they disclosed the abuse.

Only one of the alleged victims was 14 when she met Cruz; the others were ages 4 to 11. Through one pair of sisters, Cruz met their friends, another pair of sisters. Cruz followed a pattern of ingratiating himself with the mothers of these young girls, who did not have fathers or other guardian figures available and able to help keep an eye on them. Initially, he managed to come across to both the adults and the girls as gentlemanly. Later, once he had gained the opportunity to be alone with the girl, the threats began.

Through the 14-year-old girl, Cruz met her younger sister and that sister's friend and classmate, OJ. With the exception of OJ, who disclosed the one and only time she had contact with Cruz, all the girls believed his threats of physical harm or death and were very reluctant to reveal the abuse, even after Cruz was no longer around.

This court has recognized that evidence of prior bad acts is especially probative in cases of child sexual abuse because of "(1) the secrecy in which the acts occur, (2) the vulnerability of the victims, (3) the lack of physical proof of the crime, (4) the degree of public opprobrium associated with the accusation, (5) the unwillingness of victims to testify, and (6) the jury's general ability to assess the

credibility of child witnesses." State v. Baker, 89 Wn. App. 726, 736, 950 P.2d 486 (1997), review denied, 135 Wn.2d 1011 (1998). In Baker, the evidence was sufficient to establish a common scheme or plan where the defendant allowed young girls at a slumber party to sleep with him and then touched them while they slept. See also State v. Krause, 82 Wn. App. 688, 696, 919 P.2d 123 (1996), review denied, 131 Wn.2d 1007 (1997). In Krause, the defendant's scheme was to gain access to young boys through his relationships with his girl friends and by playing games with the children and taking them on outings; he molested them once they were isolated. Cruz similarly established a pattern that was manifest in his conduct with AB and FP as well as with the girls whose accusations formed the basis of his current convictions.

We conclude the trial court did not abuse its discretion when it admitted evidence of Cruz's abuse of sisters AB and FP under the common scheme or plan exception to ER 404(b).

*Jury Instruction*

The trial court gave a limiting instruction pertaining to the evidence of Cruz's acts against sisters AB and FP, as proposed by the State:

> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.
> However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the Information. Bear in mind as you consider this evidence at all times, the State has the burden of proving that the defendant committed each of the elements of the offense charged in the Information. I remind you that the defendant is not on trial for any

act, conduct, or offense not charged in the Information. Instruction 7.

Cruz contends the instruction was an unconstitutional comment on the evidence and misleading. Cruz did not object to the giving of this instruction. Nevertheless, a claim that a jury instruction constitutes an impermissible comment on the evidence may be raised for the first time on appeal. State v. Levy, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). This court reviews a jury instruction de novo, within the context of the jury instructions as a whole. Levy, 156 Wn.2d at 721.

Cruz contends that instruction 7 should have used the word "alleged," as in the "defendant's *alleged* commission" of a prior offense. Without that modifying term, he argues, the instruction conveyed to jurors that the trial court believed the testimony of sisters AB and FP. For this argument, Cruz relies primarily on Dewey.

Dewey was a date rape case in which the defendant claimed the intercourse was consensual. Dewey, 93 Wn. App. at 52. The trial court permitted the State to present testimony by another woman concerning a previous incident and gave a limiting instruction both before and after she testified. Before the woman testified, the court directed the jury to consider the "incident" only for the limited purposes the court specified. The second time, the court instructed the jury that evidence had been introduced "'on the subject of the *rape* of [the other woman] in June of 1994, for the limited purpose of showing if . . . .'" Dewey, 93

13

Wn. App. at 58. The reviewing court concluded that in the jury's mind, the previous incident could be a "rape" only if the previous victim's testimony were to be believed, and thus the instruction allowed the jury to infer that the judge accepted that testimony as true. Dewey, 93 Wn. App. at 59.

The instruction in Dewey characterized the previous act as a rape in no uncertain terms, whereas instruction 7 in this case merely referred to the testimony of the two sisters as "evidence" of a prior offense. Instruction 7 did not need to contain the word "alleged" to avoid being a comment on the evidence. It did not convey an opinion that the prior offense had been committed. Rather, instruction 7 conveyed a straightforward message about how the jury was to consider the evidence: it could be "considered for its bearing on any matter to which it is relevant," but on its own, the evidence was "not sufficient to prove the defendant guilty" of the crimes for which he was on trial.

The trial court's first instruction to the jury cautioned jurors against interpreting anything the judge said as an expression of personal opinion:

> It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

Instruction 1. To the extent that a strained reading of instruction 7 might suggest an opinion that evidence is equivalent to a finding of guilt, we are confident that instruction 1 would have dissuaded the jury from adopting such an interpretation.

Cruz also contends instruction 7 was misleading because the instruction

14

referred to the offenses of "sexual assault or child molestation," rather than the lesser offense of communication with a minor for immoral purposes to which Cruz pleaded guilty. But Cruz did not object to instruction 7 on the basis that it was misleading. Noncontitutional claims regarding jury instructions are waived if a defendant fails to object. RAP 2.5; State v. O'Hara, 167 Wn.2d 91, 103, 217 P.3d 756 (2009).

Moreover, as the State correctly points out, it was not a conviction the State sought to introduce at trial, but the evidence of the acts involving sisters AB and FP, for the purpose of showing a common scheme or plan. Here, the evidence supports the inference that Cruz sexually assaulted and molested the sisters in a markedly similar manner to his other victims, regardless of what lesser conviction he was able to negotiate at the time.

## CHILD HEARSAY

Cruz contends the trial court erred in finding the earlier statements of sisters AB and FP and their friend, JC, sufficiently reliable to be admitted under the child hearsay statute. A statement by a child under age 10 describing sexual contact is admissible if the court finds "the time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(1). A court's decision to admit child hearsay statements is reversible when the court abuses its discretion in weighing the factors articulated in State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984). State v. Pham, 75 Wn. App. 626, 631, 879 P.2d 321 (1994), review denied, 126 Wn.2d 1002 (1995). Cruz argues the court

15

failed to consider each Ryan factor, failed to find each factor was substantially satisfied, and failed to consider several of the factors.

The Ryan factors are nonexclusive and nonessential. State v. Karpenski, 94 Wn. App. 80, 108, 971 P.2d 553 (1999), abrogated on other grounds by State v. C.J., 148 Wn.2d 672, 63 P.3d 765 (2003). "It is clear that not every factor listed in *Ryan* needs to be satisfied before a court will find a child's hearsay statements reliable" under the statute, and that the reliability factors need only be substantially met. State v. Swan, 114 Wn.2d 613, 652, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046 (1991). The court here did not enter written findings, but its oral ruling shows it adequately considered the Ryan factors. Cruz can point to nothing in the record that shows the statements in question were unreliable. We conclude the trial court did not abuse its discretion in admitting the child hearsay testimony.

## DNA COLLECTION FEE

Cruz contends the sentencing court lacked authority to impose a $100 DNA (deoxyribonucleic acid) collection fee because he committed the sexual offenses before the effective date of the statute the trial court relied on, former RCW 43.43.7541 (2008).

Unlike a previous version of the statute, which made imposition of the fee dependent on the date of the offense, the statute in effect when Cruz was sentenced required the court to impose the DNA collection fee for every sentence. LAWS OF 2008, ch. 97, § 3. This version of the statute took effect on

16

June 12, 2008. Cruz was convicted on December 8, 2010, and sentenced on January 21, 2011. Because his sentence was imposed after the statute went into effect, he is subject to the $100 DNA collection fee.

## COMMUNITY CUSTODY CONDITION

As a condition of community custody, the sentencing court ordered that Cruz "be required to submit to random searches of his person, residence or computer by the Department of Corrections." Cruz argues the court exceeded its statutory authority because this condition is not crime-related.

As a monitoring tool, the random search is authorized by former RCW 9.94A.120(9)(b)(vi) (1998), in effect at the time Cruz committed some of his sex crimes. The statute provided that unless specifically waived, the sentencing court "shall include the following conditions . . . The offender shall submit to affirmative acts necessary to monitor compliance with the orders of the court as required by the department." Monitoring tools ordered to check compliance with other conditions are not "crime related prohibitions." See State v. Riles, 135 Wn.2d 326, 957 P.2d 655 (1998) (holding court had authority to order polygraph testing for purpose of monitoring compliance with other conditions of community placement), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010). The court did not lack authority to impose this condition.

STATEMENTS OF ADDITIONAL GROUNDS

Cruz filed multiple statements of additional grounds pursuant to RAP 10.10. The rule permits filing of "a" pro se statement of additional grounds. This court accepted one statement filed in February 2013 that was professionally translated. In it, Cruz raises a host of issues, including ineffective assistance of counsel (for the time he was represented by appointed counsel), double jeopardy violations, prosecutorial misconduct, speedy trial violations, and violations by the State of its duty to disclose material information. Because Cruz's arguments are unclear and do not adequately inform the court of the nature and occurrence of the alleged errors, they do not merit further review. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

We also received from Cruz in May 2013 a handwritten statement, which we have considered as a supplement. In it, Cruz appears to be arguing that the trial court erred by denying his motion for a mistrial after the rooftop incident. This issue was adequately covered by appellate counsel and does not warrant further review.

Affirmed.

Becker, J.

WE CONCUR:

Leach, C.J.

Cox, J.

18