[No. 35384-5-I.   Division One.   July 22, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH KRAUSE, *Appellant*.

*Richard R. Tassano* of *Washington Appellate Project*; and *Keith Krause*, pro se, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates, Deputy*, for respondent.

BECKER, J. — Keith Krause appeals his conviction on charges of child molestation and child rape. Krause contends the trial court erred in admitting evidence of uncharged sex abuse to show a "common scheme or plan" to molest young boys. We affirm.

## I.

The State charged Keith Krause with one count of first degree child rape and five counts of first degree child molestation. Krause, thirty-six, knew the two alleged victims through his girlfriend, Wendy. At the time the charged acts allegedly occurred, Wendy was living with her brother and his family. The family included a six-year-old boy, J. Krause was living with Wendy's sister and her family.

Trial testimony established that Krause was nice to J

when he came to visit. Wendy and the boy grew to like him. Krause and Wendy took J to the park, to movies, to McDonald's, and on camping trips. J's mother recalled that J talked about Krause "all the time." J's uncle said Krause's relationship with J was "like a father . . . to a son."

When J became scared during the night, he would sometimes go to Wendy's bed to sleep. Krause often slept in Wendy's bed as well. When J stayed over at Krause's house, he would sleep with Wendy and Krause in Krause's bed. J said that Krause would sometimes touch his privates during the night on these occasions. One night, Krause put his mouth on J's penis.

B, also age six, was a frequent visitor at J's house. Krause befriended B and included him in activities such as swimming and camping. During a camping trip, B slept in a tent with Krause, Wendy, and another girl. B said that on three consecutive nights, Krause fondled his private parts in the tent while the others were sleeping. Although he did not remember the event at trial, B told a social worker that Krause also touched his private parts once when he slept over at J's house.

Krause denied that he had inappropriately touched either boy.

At trial, the State moved to introduce evidence of prior acts of child molestation perpetrated by Krause. The evidence would come in through the testimony of Roger Wolfe, a court-appointed psychologist who interviewed Krause following his arrest on charges of child molestation in 1982. Krause pleaded guilty to those offenses and served approximately six years in prison.

Krause told Wolfe that in about 1978, he became emotionally attached to C, who was then six or seven years old. Krause was living with a friend and sleeping on his couch. C, who was the son of the friend's girlfriend, would sleep on another couch in the same room. After several weeks Krause and C began sleeping together. Krause came home drunk one night and fondled the boy's penis. From

that point, Krause began to fantasize about sex with young boys. His sexual contact with C became increasingly frequent. Krause eventually moved out of the house because he felt guilty about his behavior. He would sometimes visit, however, and have sexual contact with C. He started taking C on outings, such as camping trips, where the two would share a sleeping bag. The sexual contact progressed to the point where Krause was performing fellatio on the boy.

Krause told Wolfe that in 1980, he began to have sexual contact with another child, the seven-year-old son of one of Krause's friends. Krause reported grooming the boy by paying attention to him and playing games with him. He said he had sexual contact, usually including fellatio, with this boy about five times. Krause also had sexual contact with the boy's younger brother about five times.

Krause also told Wolfe he had fondled the genitals of the young stepbrother of another friend, once in Krause's truck, and once in the basement of his home. Krause had been on a camping trip with this boy. Finally, Krause told Wolfe he had sexual contact with an eight-year-old boy whom he had befriended in the course of his duties as manager of a hotel in North Seattle.

After an extensive pretrial hearing, the trial court concluded that evidence of Krause's prior offenses served to prove the existence of a common scheme or plan to molest young boys. Pursuant to this ruling, the court permitted the State to introduce the testimony of Roger Wolfe, who described Krause's earlier sexual contact with the five boys. The court did not permit the State to call any of the earlier victims to testify.

When evidence of Krause's prior acts came in at trial, the court instructed the jury to limit its use of this evidence:

> Evidence of these other allegations or acts has not been admitted and cannot be considered, to prove the character of the defendant in order to show that he acted in conformity therewith. The evidence may only be considered to determine whether or not it proves a common scheme or plan.

This instruction was also included in the jury instructions.

Krause twice moved for a mistrial, arguing that Wolfe's testimony denied him a fair trial. The court denied the motions. The jury found Krause guilty. The court imposed an exceptional sentence of 360 months' imprisonment.

## II.

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The primary issue in this case is whether the court erred in admitting evidence of Krause's prior acts of child molestation as proof of an alleged plan to molest J and B.

The Washington Supreme Court recently considered the scope of the common plan or scheme doctrine in *State v. Lough*, 125 Wn.2d 847, 889 P.2d 487 (1995). In *Lough*, the defendant was charged with drugging a woman and raping her while she was unconscious. The State sought to introduce evidence that over a ten-year period, Lough had drugged and raped four other women in a similar fashion. The trial court admitted the evidence for the purpose of showing Lough's plan to commit the charged crime. On appeal, the Supreme Court noted a split of authority in Washington as to when evidence of prior crimes may be admitted to show a common scheme or plan. One line of authority limited this exception to cases where the several crimes are constituent parts of a single overarching plan.[1] Another line of cases allows such evidence where the defendant has devised a plan and used it repeatedly to

---

[1]*See, e.g., State v. Bowen*, 48 Wn. App. 187, 738 P.2d 316 (1987); *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952).

perpetrate separate but similar crimes.[2] Approving the latter, less restrictive line of authority, the Court held that the defendant's prior, similar acts of sexual abuse were admissible under ER 404(b) to show his plan to drug and rape the victim.

■ The *Lough* court set forth a four-step analysis to determine whether evidence is admissible to show a common scheme or plan under ER 404(b).

> Proof of such a plan is admissible if the prior acts are (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.

*Lough*, 125 Wn.2d at 852.

Applying the four-step analysis to the facts of the present case, we find no error in the trial court's admission of the evidence. First, there is little question that the prior acts introduced against Krause were proved by a preponderance of evidence. The trial court admitted only those acts to which Krause had confessed.

With respect to the second question, whether Krause's prior acts of child abuse served to show a common scheme or plan, the trial court concluded that Krause was "not simply predisposed to molest children," but that he had a systematic scheme for getting himself in a position where he had access to them:

> He ingratiates himself with adults who are in the position of trust over small boys, whether their parents or aunts or uncles, then he proceeds to groom them, he isolates them in certain manners . . . and then goes ahead and molests them over protest.

The trial court's conclusion on this point is sound. Krause's acts of child abuse exhibited a pattern sufficient

---

[2]*See, e.g., State v. Bennett*, 36 Wn. App. 176, 672 P.2d 772 (1983); *State v. Roth*, 75 Wn. App. 808, 881 P.2d 268 (1994), *review denied*, 126 Wn.2d 1016 (1995).

to prove a plan. After gaining access to young boys, usually by befriending their parents, Krause would work to gain the boys' affections by playing games with them and taking them on outings. Through continued contact, Krause would eventually place himself in a position where sexual contact would occur. This evidence gives the finder of fact, in Wigmore's words, "strong indication of a design (not a disposition)" to molest boys.[3] As in *Lough*, "A rational trier of fact could find that the Defendant was the mastermind of an overarching plan."[4]

■ The trial court's conclusion as to the third factor, whether evidence of Krause's prior crimes was relevant to a material issue at trial, is reviewed for an abuse of discretion.[5] In *Lough*, the court cited with approval the Minnesota decision of *State v. Wermerskirchen*, 497 N.W.2d 235 (Minn. 1993). The defendant in *Wermerskirchen* was charged with sexually touching his nine-year-old daughter. The trial court admitted testimony that the defendant had engaged in similar acts of sexual touching with a stepdaughter and two nieces. The Minnesota Supreme Court concluded the evidence in question was relevant to prove that the charged act had occurred because it tended to disprove the defense that the complainant was fabricating or imagining the sexual contact.[6] Similarly, in this case, Krause denied that the acts occurred. The trial court did not abuse its discretion in concluding that Krause's prior, similar acts of abuse were relevant to that disputed issue.

■ The fourth consideration is whether evidence of Krause's prior bad acts was more probative than prejudi-

---

[3]*Lough*, 125 Wn.2d at 858-59 (quoting 2 J. WIGMORE, EVIDENCE § 357, at 335 (James J. Chadbourn rev. ed. 1979)).

[4]*Lough*, 125 Wn.2d at 861.

[5]*Lough*, 125 Wn.2d at 847.

[6]*Wermerskirchen*, 497 N.W.2d at 242; *accord Lough*, 125 Wn.2d at 862 ("the evidence of prior druggings and rapes was relevant to the specific issue of whether the conduct on which the charge was based actually occurred or was, as the Defendant contended, a fabrication or mistake by the victim.").

cial. In a case of alleged child molestation, evidence indicating that the accused is a pedophile undoubtedly creates the possibility that the jury will consider the disposition rather than the design, and will convict on the basis of character rather than evidence. Courts have often held that the inference of predisposition is too prejudicial and too powerful to be contained by a limiting instruction.[7] At the same time, prior similar acts of sex abuse can be very probative of a common scheme or plan. The need for such proof is unusually great in child sex abuse cases, given

> the secrecy in which such acts take place, the vulnerability of the victims, the absence of physical proof of the crime, the degree of public opprobrium associated with the accusation, the unwillingness of some victims to testify, and a general lack of confidence in the ability of the jury to assess the credibility of child witnesses.[8]

In *Lough*, the court considered three factors in affirming the trial court's conclusion that evidence of the defendant's prior bad acts was more probative than prejudicial. First, the court determined the evidence in question was highly probative because it tended to show that the defendant had followed the same design or plan on a number of occasions. Second, the court determined the need for the evidence was especially great because the defendant had drugged his victims and rendered them unable to clearly remember the events in question. Finally, the court noted that the trial court had "clearly and repeatedly" given a limiting instruction, thus ensuring

---

[7]*E.g., State v. Parr*, 93 Wn.2d 95, 107, 606 P.2d 263 (1980); *see also State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982) ("Once the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise") (quoting Slough & Knightly, *Other Vices, Other Crimes*, 41 IOWA L. REV. 325, 333-34 (1956)).

[8]*Wermerskirchen*, 497 N.W.2d at 240-41 (quoting 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE & PROCEDURE—EVIDENCE § 5239, at 461-62 (1978)); *see Lough*, 125 Wn.2d at 859.

the evidence would not be used to prove the defendant's bad character.[9]

██ ██ Krause's prior acts of sexual abuse were not as distinctive or unusual as Lough's, but the evidence was nonetheless highly probative. Krause consistently followed the same pattern of abuse on repeated occasions. The need for the evidence was, again, perhaps not as great as in *Lough* because, despite their young age, J and B seemed to remember and relate the events in question fairly well. But considering the factors outlined above with respect to allegations of child sex abuse, the trial court could reasonably conclude there was a heightened need for a showing of Krause's plan to abuse children. As in *Lough*, an appropriate limiting instruction "was given clearly and repeatedly and a jury is presumed to follow the trial court's instructions."[10] In addition, the trial court contained the prejudicial impact of the evidence by allowing the State to present only Krause's admissions and rejecting the proffered testimony of the young victims. Under the reasoning of *Lough*, the trial court did not abuse its discretion in determining that the probative value of the "common scheme" evidence outweighed its prejudicial effect.

We conclude the decision to allow Wolfe's testimony was not error.

## III.

██ In his supplemental pro se brief, Krause contends ineffective assistance of counsel denied him a fair trial. Krause suggests his counsel did not call several potential defense witnesses because counsel wished to finish the trial in time for the prosecutor's scheduled vacation. The record does not support this allegation. A decision not to call a witness is a matter of trial tactics that generally will not support a claim of ineffective assistance of

[9]*Lough*, 125 Wn.2d at 864.

[10]*Lough*, 125 Wn.2d at 864.

counsel.[11] Krause does not demonstrate that counsel's decision was based on anything other than legitimate trial strategy. His claim of ineffective assistance of counsel therefore fails.

Krause also contends the trial court erred in denying his motion to dismiss for violation of his speedy trial rights. Krause's speedy trial expiration date was May 16, 1994. The presiding judge granted a series of extensions through June 8, on the grounds the prosecutor was in trial on other cases. Conflicts in the prosecuting attorney's schedule may be considered "unavoidable" circumstance justifying an extension of the speedy trial date under CrR 3.3(d)(8).[12] The trial court did not abuse its discretion in denying Krause's motion to dismiss for violation of CrR 3.3.

Finally, Krause contends his Sixth Amendment rights were violated because he was not present when the criminal presiding judge granted the CrR 3.3 extensions. The confrontation clause gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence.[13] Fundamental fairness does not require a defendant to be present for consideration of a motion to extend the speedy trial expiration date.

Affirmed.

BAKER, C.J., and WEBSTER, J., concur.

Reconsideration denied September 18, 1996.

Review denied at 131 Wn.2d 1007 (1997).

---

[11]*State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

[12]*State v. Raper*, 47 Wn. App. 530, 539, 736 P.2d 680, *review denied*, 108 Wn.2d 1023 (1987).

[13]*Faretta v. California*, 422 U.S. 806, 816, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).