IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46385-7-II |
| Respondent, | |
| v. | |
| JARED YOUNG SCHAUBLE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jared Young Schauble appeals his convictions for three counts of third degree rape of a child, and one count of unlawful delivery of a controlled substance to a person under the age of 18 with sexual motivation. Schauble argues that the trial court erred by admitting evidence of his prior conviction to demonstrate a common scheme or plan and its admission violated his constitutional right to confront witnesses by allowing the evidence. In the alternative, Schauble argues that he received ineffective assistance of counsel because counsel failed to object to the evidence as a confrontation clause violation.

We hold that (1) the trial court did not err by admitting evidence of Schauble's prior conviction to demonstrate a common scheme or plan; (2) Schauble did not preserve the alleged

confrontation clause error; and (3) Schauble did not receive ineffective assistance of counsel. Accordingly, we affirm.

FACTS

K.T. was a 15-year-old girl who began text-messaging with her friend's older brother. Her friend's older brother lived with 24-year-old Schauble. Soon after K.T. text-messaged her friend's brother, Schauble responded to her text-message instead of her friend's brother. K.T. did not know Schauble prior to the text-messaging. K.T. told Schauble that she was 15 years old and in the 10th grade. Schauble responded that K.T. "was young" and that he had been in trouble in the past because of a younger girl. 4 Verbatim Report of Proceedings (VRP) at 205. Schauble and K.T. continued communicating by text-message. Schauble also told K.T. that he lived across the street from the church K.T. attended and that he had attended the church on a few occasions.

K.T. and Schauble planned to meet for the first time at the church. Schauble complimented K.T. on her appearance when they met. After their first meeting, K.T. and Schauble's communication increased and they made plans to meet again three days later.

Following that meeting, their communications continued to increase. Schauble instructed K.T. to delete their text-messages "in case [K.T.'s mom or brother] went through [her] phone." 4 VRP at 210. Schauble also told K.T. that he told his friends that she was 18 years old and instructed her to tell them that she was 18 years old too. After Schauble learned that K.T. liked to drink alcohol, he began buying her alcohol and making her drinks. Schauble frequently invited K.T. to his apartment and complimented K.T. on her physical appearance. Occasionally, Schauble gave K.T. marijuana to smoke.

K.T. and Schauble had sex for the first time after spending a day drinking alcohol at Schauble's apartment with Schauble and his friends. After that, K.T. and Schauble had sex approximately eight or nine more times. Before each time they had sex, Schauble gave K.T. alcohol. Schauble gave K.T. marijuana at least one time prior to having sex. Schauble also told K.T. that he loved her.

Eventually, K.T. and Schauble ended their relationship. Schauble was upset and talked with his neighbors, who attended the same church as K.T. Schauble admitted to his neighbors that he and K.T. had a relationship and that he wanted to harm himself and others because the relationship had ended. Schauble's neighbors reported the information to their pastor, who called K.T.'s mother and the police.

Following an investigation, the State charged Schauble with three counts of third degree rape of a child and two counts of unlawful delivery of a controlled substance to a person under the age of 18 with sexual motivation.[1]

Schauble filed a motion in limine to "[p]rohibit the State and/or its witnesses from introducing any out-of-court testimonial statements unless the declarant testifies and is available to be cross-examined in open court." Clerk's Papers (CP) at 21. The trial court asked the State whether it anticipated any confrontation issues. The State responded, "No, Your Honor. Unless it's a hearsay exception of some sort." 1 VRP at 31. The trial court granted the motion in limine, and reminded the parties: "And again, just so the record is clear and counsel is clear, I realize things come up in trial and may have to have a separate ruling on this." 1 VRP at 32.

---

[1] Subsequently, the State voluntarily dismissed one count (Count V) of unlawful delivery of a controlled substance to a person under the age of 18.

The State sought to introduce evidence of Schauble's prior conviction in 2008 for communication with a minor for immoral purposes and possession of depictions of minors engaged in sexual conduct, including the testimony of the investigating officer, Woodland Police Officer Brent Murray. The State argued that the evidence of Schauble's prior conviction was admissible to demonstrate a common scheme or plan. Schauble objected, arguing that the 2008 conviction was not admissible under ER 404(b) because it had different elements than the charged crime, and the offenses were neither similar nor committed under similar circumstances.

The trial court found that information about Schauble's prior conviction was admissible because the 2008 conviction was substantially similar to the current charge, relevant, and the probative value of the evidence outweighed potential unfair prejudice. The trial court again reminded the parties to renew their objections if they thought the issues should be re-addressed.

With regard to the admissibility of the specific evidence relating to Schauble's prior conviction and Officer Murray's testimony, the State represented to the trial court that the parties had "reached an agreement as to what [was] disputed." 4 VRP at 155. The State asserted that it and Schauble had reviewed the evidence and determined that Officer Murray would testify regarding

> [W]ho, what, when, where, and why; specific statements that the defendant made.
>     We've marked the entire report, and so we'll refer to specific text messages, you know admissions that the defendant made. But none of that will be admitted. . . . It's going to be solely Officer Murray's oral testimony.

No. 46385-7-II

4 VRP at 155. Schauble did not object, and the trial court ruled that the evidence described by the State was admissible. The trial court also ruled that before evidence of Schauble's prior conviction was presented to the jury, a limiting instruction would be given.[2]

Officer Murray testified about his 2008 investigation of Schauble. During his testimony, Officer Murray had difficulty recalling certain details and referred to his 2008 investigation report to refresh his recollection.[3] Schauble did not object to Officer Murray using his investigation report to refresh his recollection. The report itself was not admitted into evidence.

Officer Murray testified that in 2008, then 20-year-old Schauble, was living in Tacoma and made contact with S.B., a 14-year-old girl, who was living approximately 120 miles south of Tacoma in Woodland, Washington. Schauble contacted S.B. on Myspace through S.B.'s older friend. Schauble and S.B. began communicating through text-messaging and Myspace. Schauble knew that S.B. was 14 years old. Schauble directed S.B. to hide their communications and instructed her to give a false name when she called his house and erase caller ID. Schauble complimented S.B.'s physical appearance, and told S.B. that he loved her. S.B.'s mother became

---

[2] The trial court gave the following limiting instruction immediately before Officer Murray testified:

> [C]ertain evidence has been admitted in this case for only a limited purpose. This evidence consists of the testimony of Woodland Police Officer Murray, as well as the defendant's 2008 conviction, and may be considered by you only for the purpose of determining whether or not it proves a common scheme or plan. You may not consider it for any other purpose.

5 VRP at 307.

[3] *See* ER 612—Writing used to refresh memory.

5

aware of the relationship and attempted to end the communication. However, Schauble continued communicating with S.B.

Schauble organized a party in Woodland to celebrate the end of the high school standardized testing, and created a flier for the party referencing elicit substances. Schauble and S.B. planned to meet at the party and to have sex that day. Officer Murray arrested Schauble when he arrived at the party to meet S.B. After his arrest, Schauble told Officer Murray that he was attracted to young girls and that he had come to Woodland to have sex with S.B. According to Officer Murray, Schauble stated, "[S]omething to the effect of," he "probably would have had sex with her" had he not been arrested. 5 VRP at 338. Schauble did not object to Officer Murray's testimony.

In its jury instructions, the trial court reiterated its limiting instruction regarding Officer Murray's testimony. The jury found Schauble guilty of three counts of third degree rape of a child and one count of unlawful delivery of a controlled substance to a person under the age of eighteen. Schauble appeals.

## ANALYSIS

### A.    ER 404(b)—PRIOR CRIMES AND BAD ACTS

Schauble argues that his prior conviction is not substantially similar to the current charge and that the circumstances do not "support an inference of an overarching plan." Br. of Appellant at 12. We disagree.

#### 1.  Legal principles

We review the trial court's determination to admit or exclude evidence for an abuse of discretion. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). A trial court abuses its

discretion when its decision is based on untenable grounds or untenable reasons. *State v. Barnett*, 104 Wn. App. 191, 199, 16 P.3d 74 (2001). ER 404(b) prohibits admission of evidence to prove a defendant has a criminal propensity. The rule states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). ER 404(b) does provide that evidence of other crimes may "be admissible for other purposes," such as demonstrating a common scheme or plan. *Gresham*, 173 Wn.2d at 421.

Evidence is admissible to prove a common scheme or plan (1) "'where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan'; or (2) 'where an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. Lough*, 125 Wn.2d 847, 855, 889 P.2d 487 (1995)).

The second type of common scheme or plan is at issue here. "Evidence of this second type of common scheme or plan is admissible because it is not an effort to prove the *character* of the defendant. Instead, it is offered to show that the defendant has developed a plan and has again put that particular plan into action." *Gresham*, 173 Wn.2d at 422.

To admit evidence of a common scheme or plan, the prior misconduct and the charged crime must demonstrate markedly and substantially similar features such that the various acts are naturally explained as caused by a general plan and the two outcomes are simply individual manifestations. *Gresham*, 173 Wn.2d at 422. However, mere similarity in results is insufficient to demonstrate a common scheme or plan. *Gresham*, 173 Wn.2d at 422.

> To admit evidence of a person's prior misconduct, "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*Gresham*, 173 Wn.2d at 421 (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). The party seeking to introduce evidence has the burden of establishing the proper purpose. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

2. Admission of common scheme or plan evidence

The trial court applied the four-step analysis outlined in *Gresham* to the facts here and found the evidence was admissible. We hold that the trial court did not abuse its discretion in admitting the evidence of Schauble's prior conviction.

The first step in the analysis requires the trial court to find by a preponderance of the evidence that the misconduct occurred. Here, the trial court found this requirement was met based on the parties' stipulation.

The second step in the analysis requires the trial court to identify the purpose for the evidence. *Gresham*, 173 Wn.2d at 421. A proper purpose for prior misconduct evidence is to show the existence of a common scheme or plan. *Id.* at 422. This common scheme or plan requirement "need not be 'a unique method of committing the crime.'" *Id.* (quoting *DeVincentis*, 150 Wn.2d at 21). In determining commonality, the trial court need only find that the prior bad acts show a pattern or plan with substantial similarities to the facts in the case before it. *DeVincentis*, 150 Wn.2d at 13.

Here, the trial court found that although the results were not the same, the prior acts and the charged crime shared common features, like the commonality of the age of the victims and the

patterns of grooming. The evidence showed a pattern of Schauble making contact with young girls through the young girls' older acquaintances. Schauble befriended the victims, and then eventually, through the continued endearing communication, Schauble attempted to meet the girls. Schauble complimented the girls on their physical appearance and declared his love for both. Further, Schauble instructed both victims to hide their relationship. Based on the marked similarity between the two incidents, the trial court concluded that the prior acts in 2008 were "caused by a general plan of which the charged crime and the prior misconduct are the individual manifestation; endearing himself to younger women to have sex with them." 2 VRP at 119.

The trial court's conclusion that the prior act was substantially similar to the current charge was not an abuse of discretion. *See State v. Krause*, 82 Wn. App. 688, 694-95, 919 P.2d 123 (1996) (holding that the trial court's conclusion that the evidence demonstrated a common scheme or plan was sound where the defendant gained access to his victims by befriending their parents, gained the victims affection by entertaining them, and then eventually put himself in a position where sexual contact would occur), *review denied*, 131 Wn.2d 1007 (1997).

The third step in the analysis requires the trial court to determine whether the evidence is relevant. *Gresham*, 173 Wn.2d at 421. The trial court found the evidence relevant because of Schauble's general denial that the charged crime occurred.

Evidence of a common scheme or plan "is relevant when the existence of the crime is at issue." *DeVincentis*, 150 Wn.2d at 21. Generally, where a defendant denies the charged act occurred, evidence of a common scheme or plan is relevant to disproving the defendant's denial. *DeVincentis*, 150 Wn.2d at 21; *Krause*, 82 Wn. App. at 695. Here, Schauble denied that he and

K.T. had sexual intercourse. Thus, the trial court's conclusion that the evidence was relevant was not an abuse of discretion.

The fourth step in the analysis requires the trial court to weigh the probative value of the evidence against its prejudicial effect. *Gresham*, 173 Wn.2d at 421. The trial court found that the probative value of the evidence outweighed the potential unfair prejudice.

Evidence of a common scheme or plan is particularly probative where the State's evidence relies on the victim's testimony and where "there is very little proof that sexual abuse has occurred." *State v. Slocum*, 183 Wn. App. 438, 455 n.3, 333 P.3d 541 (2014); *see Krause*, 82 Wn. App. at 696-97; *see also State v. Russell*, 154 Wn. App. 775, 784, 225 P.3d 478 (2010), *rev'd on other grounds by State v. Russell*, 171 Wn.2d 118, 249 P.3d 604 (2011). Further, "trial courts [should] give special consideration to the probative value of such evidence when balancing against the prejudicial effect of such evidence, especially when corroborating evidence is not available." *DeVincentis*, 150 Wn.2d at 25. Where there is a heightened need for the evidence and an accompanying limiting instruction is given, the probative value outweighs the potential unfair prejudice. *See Krause*, 82 Wn. App. at 697.

Here, other than K.T.'s testimony, there was no corroborating evidence that Schauble had sexual contact with K.T. Thus, the need for evidence was great. The trial court demonstrated a mindful analysis of the risk of prejudice and required an appropriate limiting instruction.

An abuse of discretion is found when "no reasonable person would take the view adopted by the trial court." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001). Under the facts of this case, the trial court's conclusions of the four factors was reasonable in light of the parties' stipulation that the 2008 misconduct occurred, the marked similarities between the 2008 incident

and the charged crime, the relevance of the evidence given Schauble's denial of the charged crime, and the trial court's finding that the probative value substantially outweighed any unfair prejudicial effect was reasonable because of the heightened need for evidence. Thus, the trial court did not abuse its discretion in finding that Schauble's prior act was admissible to show a common scheme or plan.[4]

Schauble argues that two incidents are insufficient to demonstrate a common scheme or plan. Schauble relies on *State v. Slocum*, but *Slocum* supports the trial court's ruling. *See* 183 Wn. App. at 455 (finding that evidence of one prior incident was admissible to demonstrate a common scheme or plan).

In *Slocum*, the court focused on the similarity of the acts, not on the number of incidents. *Id.*[5] The defendant was convicted of molesting his granddaughter after inviting her to sit on his lap. *Id.* at 442, 455. The *Slocum* court held that the trial court did not abuse its discretion in

---

[4] Schauble argues that the trial court "erred in relying on the similar ages" of the victims "because age is an element of the current offense." Br. of Appellant at 14. To the extent that Schauble argues the trial court solely relied on the age similarity, that is belied by the record. *See* 2 VRP at 76-78 (the trial court discussing that age is a factor to consider but insufficient as the only similarity). To the extent that Schauble argues that the trial court cannot consider similarities that are also elements, or that "[t]he commonality must be a fact that is not already inherent in the crime," he fails to support that argument with authority. Br. of Appellant at 14. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[5] In *Slocum*, the defendant's conviction was reversed and remanded for a new trial because the trial court abused its discretion by admitting evidence that the defendant previously molested his stepdaughter while lying on the floor and molested his stepdaughter's friend while applying sunscreen because those incidents were opportunistic and did not fit within the common scheme or plan. *Slocum*, 183 Wn. App. at 442, 455-56.

admitting evidence that, on one prior occasion, the defendant molested his stepdaughter after inviting her to sit on his lap as evidence of a common scheme or plan. *Id.* at 455. The court held:

> [T]he incidents in which [the defendant] invited [his granddaughter and stepdaughter] to sit with him in his recliner were individual manifestations of a common plan. Inviting the girls to sit next to him or in his lap [as] a way for him to get them close enough to molest, in what would be perceived as grandfatherly behavior, and then to escalate to more sexual contact in a way that the girls might feel uncomfortable challenging.

*Id.* Because *Slocum* held that the trial court did not abuse its discretion in admitting evidence of one prior bad act as evidence of a common scheme or plan, Schauble's argument that one prior incident is inadmissible to show a common scheme or plan fails. *Id.*

B.      SIXTH AMENDMENT—RIGHT TO CONFRONT

Schauble argues that the trial court erred by admitting Officer Murray's testimony because it contained testimonial hearsay statements in violation of his right to confront witnesses. We disagree.

We review alleged violations of the Sixth Amendment's confrontation clause de novo.[6] *State v. O'Cain*, 169 Wn. App. 228, 234 n.4, 279 P.3d 926 (2012). The Sixth Amendment guarantees a criminal defendant's right to "be confronted with the witnesses against him." U.S. CONST. amend. VI. The confrontation clause "bars the admission of 'testimonial' hearsay, unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination." *O'Cain*, 169 Wn. App. at 235; *see State v. Koslowski*, 166 Wn.2d 409, 417, 209

---

[6] This court reviews confrontation clause issues under the federal confrontation clause. *State v. Lui*, 179 Wn.2d 457, 470, 315 P.3d 493 *cert. denied*, 134 S. Ct. 2842 (2014) ("Neither the constitutional text, the historical treatment of the confrontation right, nor the current implications of adopting a broader confrontation right support an independent reading of article I, section 22 [of the Washington State Constitution] in this case.")

P.3d 479 (2009). The State has the burden to establish that the statements are nontestimonial. *O'Cain*, 169 Wn. App. at 235.

      1.     Error not preserved

Schauble did not object to Officer Murray's testimony, nor did he object to the evidence on the basis of hearsay or the confrontation clause. The defendant has an "obligation to assert the right to confrontation at or before trial" in order to preserve the error for appeal. *O'Cain*, 169 Wn. App. at 240.

> Requiring the defendant to assert the confrontation right at trial is . . . consistent with other Sixth Amendment jurisprudence. Indeed, were this not the defendant's burden, the trial judge would be placed in the position of *sua sponte* interposing confrontation objections on the defendant's behalf—or risk knowingly presiding over a trial headed for apparent reversal on appeal. Such a state of affairs is obviously untenable. Trial judges should be loathe to interfere with the tactical decisions of trial counsel—the delegation of which lies at "the heart of the attorney-client relationship." *Taylor v. Illinois*, 484 U.S. 400, 417, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). As our state Supreme Court has noted, it would be "ill-advised to have judges . . . disrupt trial strategy with a poorly timed interjection." *State v. Thomas*, 128 Wn.2d 553, 560, 910 P.2d 475 (1996). Indeed, such interjections could impermissibly "intrude into the attorney-client relationship protected by the Sixth Amendment." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835 (1994).

*O'Cain*, 169 Wn. App. at 243-44 (alteration in original).

Here, the trial court sought to avoid having to make confrontation clause objections on the defendant's behalf—the precise scenario that *O'Cain* wanted to prevent. The parties inquired about the limitations on the admissibility of the State's evidence and the trial court said: "I think the best way to handle that—that's a fairly large packet [of evidence]—is for you to let me know what you think inside this evidence, given the ruling of the court, should not come in, [Defense Counsel], rather than me try to go through and do it." 2 VRP at 126.

The State notes, and Schauble does not dispute, that Schauble reviewed the evidence prior to Officer Murray's testimony but did not object to the materials. Officer Murray, after "drawing a blank," referred to his investigation report from the 2008 investigation. 5 VRP at 310; *see* ER 612. Schauble did not object to Officer Murray using his report to refresh his recollection. Furthermore, Schauble does not argue that the materials Officer Murray used to refresh his recollection were not included in the evidence that he reviewed before Officer Murray's testimony.

Requiring the defendant to object to potential confrontation clause violations "protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal." *O'Cain*, 169 Wn. App. at 243. Schauble had numerous opportunities to object to the evidence at trial—both before Officer Murray testified and during his testimony. Because Schauble failed to take advantage of the multiple opportunities to object to the evidence at trial, which would have allowed the trial court to address the issue and prevent any potential error, this court should hold that Schauble failed to preserve his claim that his confrontation clause rights were violated.[7]

Schauble argues that his motion in limine preserved the error. Schauble fails to provide authority to support his argument that his broad motion in limine operates as a substitute for timely objections or to otherwise preserve specific errors. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after

---

[7] Furthermore, immediately prior to Officer Murray's testimony, the trial court instructed the jury that it could only consider Officer Murray's testimony for the limited purpose of determining whether it indicated the existence of a common scheme or plan. The trial court included the limiting instruction at the conclusion of the trial.

diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Thus, Schauble's argument that his motion in limine preserved the error fails.

Schauble objected to the admission of Officer Murray's testimony on the basis that the evidence did not demonstrate a common scheme or plan. On appeal, he argues that the trial court violated his right to confront witnesses by improperly admitting the evidence. However, "[w]e will not reverse the trial court's decision to admit evidence where the trial court rejected the specific ground upon which the defendant objected to the evidence and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009).

2.      RAP 2.5(a)(3)

Even if we decline to follow *O'Cain*, under the circumstances of this case, Schauble has not demonstrated a manifest constitutional error, warranting review for the first time on appeal. Generally, we do not consider issues raised for the first time on appeal. RAP 2.5(a)(3). However, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The increased risk of serious injustice to the accused merits the special treatment of constitutional errors. *State v. Fraser*, 170 Wn. App. 13, 27, 282 P.3d 152 (2012), *review denied*, 176 Wn.2d 1022 (2013). However, "permitting every possible constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials[,] and is wasteful of the limited resources of prosecutors, public defenders, and courts." *Fraser*, 170 Wn. App. at 27. To warrant review of an error first raised on appeal, the asserted error must be "manifest," which requires "a showing of actual prejudice." *Fraser*, 170 Wn. App. at 27.

Officer Murray's testimony was admitted to provide information about Schauble's prior conviction under ER 404(b) to demonstrate a common scheme or plan. Schauble points to the following statements as testimonial hearsay: [8]

> [The State]: You indicated that [S.B.'s mother] had informed the defendant to stop communicating with [S.B.]?
>
> [Officer Murray]: Correct. She personally talked to him, *told him to knock it off*. Apparently that didn't have an effect.

5 VRP at 312 (emphasis added).

> [State]: So when, if at all, did [S.B.'s] mom contact the defendant's parents?
>
> [Officer Murray]: On April 7th she received—mom, it sounds like, got a phone call from Mr. Schauble after school. And in her notes here, *she told him that he is too old to be calling and told him he is not to be in contact with [S.B.] anymore*. Basically she's telling him to stop it.

5 VRP at 323-24 (emphasis added).

> [The State]: What did you and your department do?
>
> [Officer Murray]: . . . .
>
> And we suggested mom keep the victim home. Keep her safe. Don't even let her go.
>
> *Mom was like, no, I've been dealing with this. I want this guy caught*.

---

[8] Schauble summarily concludes that numerous statements made by Officer Murray's constitute testimonial hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801. However, a large portion of the testimony that Schauble assigns error to are not out-of-court statements and, therefore, are not hearsay. And statements that are not hearsay do not present a confrontation clause issue. *See O'Cain*, 169 Wn. App. at 249 ("The confrontation clause bars the admission of testimonial hearsay statements.") Because many of the statements Schauble assigns error to are not hearsay, they do not present confrontation clause problems and we do not address those portions of Officer Murray's testimony.

> And I explained to mom that there's a risk here that, you know, we're a small town. There's only two of us working. If we miss something and he gets her, this could all go really bad.
>
> *And mom is like, no, I trust you. I want you to do this.*

5 VRP at 330-31 (emphasis added).

Although Officer Murray's testimony included the above out-of-court statements, those statements were not offered for the truth of the matter asserted. Therefore, the statements are not hearsay. ER 801 (hearsay is an out-of-court statement offered for the truth of the matter asserted). The trial court also gave a limiting instruction to the jury, instructing the jury that Officer Murray's testimony was to be considered only for the purpose of proving a common scheme or plan and may not be considered for any other purpose. The trial court repeated this limiting instruction in its final instructions to the jury. We presume the jury follows the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

Schauble has not demonstrated that the confrontation clause was implicated. And, even if the confrontation clause was implicated, given the context of the statements being admitted for a limited purpose, Schauble has not demonstrated that any error resulted in prejudice. Because Schauble has failed to demonstrate that the alleged confrontation clause error resulted in prejudice, he cannot demonstrate that the alleged error is manifest, warranting review for the first time on appeal. Accordingly, Schauble's claim fails.

3.     Ineffective assistance of counsel

Schauble argues that defense counsel was ineffective for allowing "inadmissible hearsay to be used against" him.  Br. of Appellant at 28.  We disagree.

We review ineffective assistance of counsel claims de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Failure to establish either prong is fatal to an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).  To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance.  *Grier*, 171 Wn.2d at 33.  "If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel."  *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (citing *State v. Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978)).  "To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different." *McNeal*, 145 Wn.2d at 362.

Schauble primarily argues that Officer Murray's testimony violated his motion in limine. Schauble does not, however, demonstrate how the alleged violation of his motion in limine renders defense counsel's performance deficient.

As discussed in the previous section, there is no indication that the out-of-court statements that Officer Murray testified about were offered for the truth of the matter asserted. Even if the statements did constitute hearsay, it is a reasonable trial tactic to avoid drawing attention to the statements, especially in light of the trial court's limiting instruction.

Schauble also fails to demonstrate any prejudice resulting from defense counsel's failure to object. Again, the trial court instructed the jury that they could only consider Officer Murray's testimony for purposes of proving a common scheme or plan and for no other purpose.

Furthermore, Schauble fails to demonstrate any prejudice from Officer Murray's testimony regarding S.B.'s mother's statements. S.B.'s mother's statements, even if offered for the truth of the matter asserted, would demonstrate S.B.'s mother's state of mind—not bad acts by Schauble. Because the statements did not prove Schauble's character or bad acts, the statements were not prejudicial. Thus, Schauble's claim fails.

Given the circumstances of Officer Murray's testimony and the trial court's limiting instruction, Schauble has failed to demonstrate either deficient performance or prejudice. Therefore, his claim of ineffective assistance of counsel fails.

No. 46385-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Sutton, J.